## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

EDWARD FLOREZ,

        Plaintiff,

v.                                           Civ.  No. 02-1309 JH/WDS

HOLLY CORPORATION,
d/b/a   NAVAJO REFINING
COMPANY, Artesia, New Mexico,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on (1) Defendant Holly Corporation's Motion For Judgment On The Pleadings, Or In The Alternative, For Summary Judgment [Doc. No. 28] and (2) Plaintiff's Motion To Amend Initial Pretrial Report By Interlineation [Doc. No. 34]. After a thorough review of the briefs and the pleadings on file, the Court concludes that the motion for summary judgment should be granted and the motion to amend should be denied as moot.

## DISCUSSION

This is an employment discrimination case brought under the Americans With Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA). Plaintiff Edward Florez ("Florez") was employed at a petroleum refinery in Artesia, New Mexico until his employment was terminated on July 1, 2001. The primary issue before the Court is whether Defendant Holly Corporation ("Holly") was Florez's employer. Both parties agree that if Holly was not Florez's employer, then Holly is not the proper defendant in this case.

I.      **MOTION FOR JUDGMENT ON THE PLEADINGS**

As a preliminary matter, the Court notes that Holly's request for judgment on the pleadings should be denied.  Although it is not clear from its briefs, it appears that Holly contends that it is entitled to judgment on the pleadings because Florez's Complaint contains the allegations that Navajo is "Plaintiff's former *place* of employment" (Complaint at ¶ 5, emphasis added) and that "Plaintiff was terminated from his employment *at* Navajo" (Complaint at ¶ 14, emphasis added).  Ostensibly, Holly infers from these allegations that  Florez has admitted that Navajo was his employer.  This argument puts too fine a point on the issue.  Though the Complaint is not artfully drafted, Florez does not allege that Navajo was his employer or that he was employed *by* Navajo, but rather that he worked *at* Navajo.  In addition, he alleges that Navajo is a wholly-owned subsidiary of Holly (Complaint at ¶ 5).  As a result, the allegations of the Complaint do not conclusively resolve the issue.

II.     **MOTION FOR SUMMARY JUDGMENT**

The Court must next decide whether there is a genuine issue of material fact as to whether Holly was Florez's employer under applicable law at the time his employment was terminated. Because Florez will have the burden of proof on this issue at trial, he must come forward now with sufficient evidence to create a genuine issue of material fact.

The "doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993).  In order to hold a parent company liable as an employer, the parent must exercise a degree of control which exceeds

2

that normally exercised by a parent corporation.[1]  *See id.* at 1363.

Courts have struggled with a variety of tests to determine whether a plaintiff has demonstrated an employee-employer relationship for Title VII purposes.  In *Lambertsen v. Utah Dep't of Corrections*, 79 F.3d 1024, 1028-29 (10th Cir. 1996), the Tenth Circuit identified three different approaches: (1) the common law agency inquiry; (2) the "hybrid" common law-economic realities method; and (3) the single employer or true economic realities test.  Two years later in *Lockard v. Pizza Hut*, 162 F.3d 1062, 1069-70 (10th Cir. 1998), the Tenth Circuit observed that the single employer test is the broadest and accordingly is the approach most often advocated by plaintiffs in employment lawsuits.  The court therefore applied the single employer test in *Lockard*, though noting that it has never expressly adopted that test.  *Id.* at 1070.

In light of the Tenth Circuit's decision in *Lockard*, this Court finds it most prudent to apply the single employer test to this case.[2]  Under that test, courts consider the following factors: interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.  *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1089 (10th Cir. 1991). *See also Frank*, 3 F.3d at 1362 (applying same four factors, though calling it the "integrated enterprise test").  Thus, a wholly owned subsidiary corporation and its parent corporation will be combined for purposes of the joint employer theory when the parent's control of the subsidiary exceeds that which is normally exercised by a separate parent corporation:

---

[1] The decisions cited in this Memorandum Opinion and Order are Title VII cases.  Neither party disputes that decisions in Title VII cases regarding the single employer doctrine are equally applicable to this case, despite the fact that Florez is not asserting a Title VII claim.

[2] Neither party advocates that this Court apply a different test.

3

> Underlying the single employer test is the requirement that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.  The key factor of this four-part test is therefore whether the putative employer has centralized control of labor relations.  The critical question is, what entity made the final decisions regarding employment matters related to the person claiming discrimination?

*Lockard*, 162 F.3d at 1070 (internal citations and quotations omitted).  With this statement in mind, the Court now turns to the specific application of the four factors to this case.

**A.     Interrelation of Operations**

Florez asserts that the following demonstrates interrelation of operations between Holly and Navajo: (1) Holly coordinated or provided employment benefits, including retirement benefits and health insurance, for Navajo employees; (2) in an unrelated lawsuit, Holly alleged that it provided "administrative support" for Navajo; (3) one employee of Navajo was located at Holly's headquarters in Dallas, Texas; (4) Holly shared office space with Navajo in Artesia, New Mexico; and (5) Holly hired several Navajo employees.  However, the final two items on this list occurred after Florez's employment was terminated, and therefore they are not relevant for purposes of this analysis.

With regard to the coordination of employment benefits, this does show some degree of interrelation of operations between the two companies.  However, it is far from unusual for a parent company to provide such benefits to the employees of its subsidiary.  With regard to Holly's allegation that it provides "administrative support" to Navajo, that statement is too vague to be of much value in this analysis.  "Administrative support" might include any number of things, and may be no more than the coordination of employee benefits.  Without more information, the Court cannot

4

give this statement much weight. Also, the fact that one Navajo employee worked out of Holly's office in Dallas does not, in and of itself, demonstrate a high degree of interrelatedness of operations between the two companies. Finally, the discussion of Navajo's operations in Holly's annual report and other corporate documents is of little significance. "The mere fact that the parent's annual report mentions the subsidiary or includes its revenues in its statement of net worth does not change this conclusion." *Daniels v. Kerr McGee Corp.*, 841 F. Supp. 1133, 1137 (D. Wyo. 1993) (applying the four factors and rationale of *Frank v. U.S. West*).

Taken together, the evidence put forth by Plaintiff does not rise to the level needed to show interrelatedness of operations as explained by the Tenth Circuit. *See Frank*, 3 F.3d at 1362-63 (citing cases).

**B.    Centralized Control of Labor Relations**

The Tenth Circuit has stated that a "parent's broad general policy statements regarding employment matters are not enough" to make the required showing of centralized control over labor relations. *Frank*, 3 F.3d at 1362. "To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary." *Id.* For example, in holding that a franchisor was not a Title VII employer with respect to the employees of an independently owned franchise, the Tenth Circuit was not persuaded by evidence that the franchisor "may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees," when the franchisor did not have control over its franchisee's labor relations or financial control over the franchisee. *Evans*, 936 F.2d at 1090.

As the Court explained in *Lockard*, centralized control of labor relations is the key factor in the single employer test. 3 F.3d at 1363. Under this prong, *Florez* must come forward with evidence

that Holly controlled the day-to-day employment decisions of Navajo generally, and made the final decisions regarding Florez's employment specifically.  *Id.*

The only evidence of centralized control of labor relations by Holly presented by Florez is deposition testimony regarding Holly's policy of subjecting the employees of its subsidiaries to random drug screening.  *See* Plaintiff's Response and Exhibit 3 thereto.  However, Holly does not administer or coordinate the drug testing.  *See* Defendant's Reply and Exhibit G thereto. Furthermore, Florez presents no evidence that Holly made any decisions whatsoever about his employment—whether to hire, promote, discipline, reassign, or terminate him.  The evidence presented by Florez simply does not satisfy this crucial prong of the test.

   C.   **Common Management**

The record establishes some common management between Holly and Navajo.  The same individual, Matt Clifton, serves as president of both companies, and the two now share some common officers.[3]  *See* Plaintiff's Exhibits 3 and 7.  However, this is not sufficient to satisfy the common management requirement of the single employer test.  *See Lockard*, 162 F.3d at 1071; *Frank*, 3 F.3d at 1364.  The record simply contains no evidence from which a finder of fact could determine whether Holly controlled the day-to-day employment decisions of Navajo, whether Holly made the final decisions regarding employment matters for Navajo, or the degree of interrelatedness between the two companies.  Although Holly's policies regarding some matters, such as drug testing, were utilized at Navajo, Florez has produced no evidence indicating what role, if any, Holly played in implementing or effecting these policies.

─────────────────────

   [3]Holly claims that the overlap in officers is irrelevant because it took place after Florez's employment was terminated.

### D.  **Common Ownership or Financial Control**

In order support this factor of the test, Florez points to the fact that Navajo is owned entirely by Holly.  However, Navajo's status as a wholly-owned subsidiary of Holly merely demonstrates common ownership which, "standing alone, can never be sufficient to establish parent liability." *Frank*, 3 F.3d at 1364.  Further, the undisputed evidence in the record is that Holly corporation does not involve itself with Navajo's payroll or bills, nor does it issue paychecks to Navajo's employees. Defendant's Exhibit G, Loyd Supp. Aff. at ¶ 11; Defendant's Exhibits C and D.  Therefore, there is no evidence in the record that Holly exercises an undue level of financial control over Navajo.

In sum, Florez has failed to come forward with adequate evidence to create a genuine issue of material fact on the question of whether Holly was his employer under the "single employer" test. There is insufficient evidence in the record from which a jury could conclude that Holly exercises a degree of control over Navajo that exceeds that normally exercised by a parent corporation.  *Frank*, 3 F.3d at 1363.  Accordingly, Holly's motion for summary judgment will be granted.

### III.  **REQUEST FOR LEAVE TO AMEND**

The final issue before the Court is Florez's request for leave to amend to substitute Navajo for Holly as the defendant in this case.  Although the Court will liberally grant leave to amend when justice so requires, the circumstances presented here do not justify such liberality.  First, Plaintiff has admitted in his deposition that he understood Navajo to be his employer.  *See* Defendant's Exhibit B, Deposition of Edward Florez.  Therefore, apparently there was no confusion or ignorance by Florez as to the identity of his employer at any time prior to or during this litigation.  Second, Florez named Navajo as his employer when he filed his EEOC Charge of Discrimination as a prelude to filing his complaint (which again demonstrates Florez's prior knowledge).  As a result, Navajo was the

7

respondent and the administrative process excluded Holly altogether.  Florez provides no explanation for his decision to name a different entity as defendant in this litigation.  Third, in its answer to the complaint, Holly put Florez on notice that he had sued the wrong entity and that Navajo was Florez's employer.  In fact, Holly's answer makes that assertion three separate times.  Answer to Complaint at ¶ ¶ 2, 5 and First Aff. Defense.  As a result, Florez had ample opportunity early in the case to investigate that assertion and to seek leave to amend his complaint.  Florez did not do so and provides the Court with no explanation for his inaction.  Under these circumstances, Florez's request for leave to amend should be denied. *See Frank*, 3 F.3d at 1365-66 (affirming denial of leave to amend where request was untimely and plaintiff offered no adequate explanation for the delay); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.").

As a result of the foregoing, Plaintiff's Motion To Amend Initial Pretrial Report By Interlineation is moot and will be denied.

IT IS THEREFORE ORDERED that:

(1)    Defendant Holly Corporation's Motion For Judgment On The Pleadings, Or In The Alternative, For Summary Judgment [Doc. No. 28] is GRANTED; and

(2)    Plaintiff's Motion To Amend Initial Pretrial Report By Interlineation [Doc. No. 34] is DENIED as moot.

UNITED STATES DISTRICT JUDGE